**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:20-cv-60504

NORTHSIDE CHIROPRACTIC, INC.,
a Florida corporation; DOC TONY
WESTSIDE CHIROPRACTIC, LLC,
a Florida limited liability company;
SOUTHSIDE CHIROPRACTIC CENTRE,
INC., a Florida corporation; and DOC
TONY CLAY CHIROPRACTIC, INC.,
a Florida corporation,

    Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois corporation;
and STATE FARM FIRE & CASUALTY
COMPANY, an Illinois corporation,

    Defendants.
_____/

## STATE FARM'S MOTION TO DISMISS

Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company ("State Farm") move under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., to dismiss the Complaint of Plaintiffs Northside Chiropractic, Inc., Doc Tony Westside Chiropractic, LLC, Southside Chiropractic Centre, Inc. and Doc Tony Clay Chiropractic, Inc. ("Plaintiffs") and to strike Plaintiffs' request for attorneys' fees.

## INTRODUCTION

Plaintiffs' 33 page, 182 paragraph Complaint is long on rhetoric but short on pertinent facts. The vast majority of Plaintiffs' allegations are dedicated to a rambling rant about a purported decades-old scheme to "manufacture knowingly false accusations of fraud against chiropractors treating auto accident patients," Doc. 1 at ¶ 3; *see id.* ¶¶ 49-161, while less than a half dozen

paragraphs (¶¶ 164-168) actually set forth allegations describing the purported dispute among the parties. According to Plaintiffs, they are chiropractic rehabilitation facilities who treat patients injured in automobile accidents, including some untold number of State Farm insureds. Doc. 1 ¶ 1. Plaintiffs contend that a dispute has arisen with State Farm "as the result of false allegations of fraud maintained by State Farm" based on statistical analyses of claims submitted by Plaintiffs, despite the fact that, as Plaintiffs acknowledge, State Farm has made no such allegations. *Id.* ¶ 2.

Indeed, Plaintiffs' allegations, at most, show that State Farm has "issues of concern" about whether Plaintiffs are submitting bills based on a "predetermined treatment plan" rather than individualized treatment, and that those concerns are under investigation and may or may not give rise to fraud claims. Thus, Plaintiffs' barrage of irrelevant allegations does not hide that:

(1)  This suit is premature because under standing and ripeness doctrines, there is no present case or controversy, and, in fact, there may never be a dispute among the parties;

(2)  If an actual dispute ever arises among the parties, it will be too fact-intensive for a declaratory judgment action because the probative value of statistical analyses must be judged on a case-by-case basis; and

(3)  Plaintiffs' attempt to adjudicate whether statistical evidence can ever be probative of a fraud claim fails to satisfy the *Twombly* standard of alleging a plausible claim against State Farm.

For these reasons, as explained further below, the Complaint should be dismissed. Further, Plaintiffs' unsupported request for attorneys' fees should be stricken.

## PERTINENT FACTS AND ALLEGATIONS

**I.  Florida Law Requires State Farm To Monitor Insurance Claims For Potential Fraud, Including Through The Use Of Large-Scale Data Analyses**[1]

At the outset, it is important to understand the statutory obligations imposed on insurers

---

[1] The Court can take judicial notice of the laws, regulations, and regulatory guidance that govern State Farm's fraud detection procedures. *See Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1113 (S.D. Fla. 2019).

such as State Farm.  PIP fraud has been rampant in Florida for years, and the costs of that fraud are borne by Florida insureds through higher insurance premiums.  Division of Invest. & Forensic Servs., Dep't of Fin. Servs., Best Pracs. Report 2018, ("Best Practices Report").[2]  The costs of insurance fraud have been described as follows:

> Unfortunately, insurance fraud costs grow annually and are paid by insurance consumers in the form of higher insurance premiums. [National Association of Insurance Commissioners] statistics estimate that insurance fraud cost is approximately $100 billion annually, and it affects every type of coverage, i.e., health, auto, commercial, or property insurance. To put this in perspective, fraud costs every Floridian $100.00 a year for every $1,000.00 of their homeowner's or auto insurance premium, with 10 percent of all property casualty premiums collected to pay for the costs to prevent, detect, investigate, and prosecute fraud[.]

*Id.* at 2.  The Office of Insurance Regulation explained that Florida is the epicenter for PIP fraud:

> In recent years, the number of drivers and auto accidents has remained relatively constant, but the amount of PIP claims, and PIP payments has skyrocketed.  The National Insurance Crime Bureau lists Florida as having several cities reporting the highest amount of "questionable claims" nationally.  While PIP premium represents roughly two percent of Florida's collected insurance premium, this issue accounts for nearly 50 percent of fraud referrals.

Fla. Off. Ins. Comm'r, Personal Injury Protection (PIP) for Auto Ins., at https://www.floir.com/ Sections/PandC/ProductReview/PIPInfo.aspx.

A 2012 report on PIP fraud describes several schemes, including those by chiropractors submitting bills for treatments that were never administered.  Div. of Ins. Fraud, *Mission to Combat & Reduce PIP Fraud* (Aug. 27, 2012).  The same study explained that PIP fraud accounted for more arrests and prosecutions than any other type of insurance fraud, and the majority of the PIP fraud prosecutions occurred in Dade, Palm Beach, Hillsborough, Orange, and Broward Counties.  *Id.* at 8-9.  State Farm was a victim in many of the fraud schemes discussed.  *Id.* at 11-12.

---

[2] Available at https://www.myfloridacfo.com/Division/DIFS/Resources/documents/2018 BestPracticesReportv1.pdf.

In an effort to quell insurance fraud, Florida law requires that insurers create and implement procedures to detect and report such fraud.  Fla. Stat. § 626.9891; Fla. Admin. Code § 69D-2.001-2.005.  The Florida Department of Financial Services, through the Division of Forensic and Investigative Services (the "Anti-Fraud Unit"), oversees Florida's insurance fraud reporting and investigative requirements.  Fla. Stat. § 626.9891(2); Fla. Admin. Code § 69D-2.002.  Insurers' fraud detection-procedures must be filed with and reviewed by the Anti-Fraud Unit.  Fla. Admin. Code § 69D-2.003, 2.005.[3]

Pursuant to statute, Florida's Anti-Fraud Unit, issued a "Best Practices Report."  Fla. Stat. § 626.9891(9); Best Pracs. Report.  Among those practices are the use of "fraud detecti[on] software," "'red flag' indicators," and data analytics.  *Id.* at 3-4.  Under the heading "Using Big Data to Fight Fraud," the Anti-Fraud Unit explains:

> With the growing complexity of fraud, insurers need to put in place forward-looking fraud detection techniques that efficiently analyze data and help minimize fraud loss.  Insurers tend to collect large amounts of structured, semi-structured and unstructured data which are seldom evaluated in fraud investigation operations.  Combining analysis of data along with the existing fraud detection techniques enable insurers to enhance productivity of underwriting and claims processes and maintain a competitive advantage. As insurers move to analytics to detect fraud, specific policies should be considered regarding how data is compiled. The use of technological tools with sophisticated computer analytics can make certain that programs are evaluated for accuracy and fairness.

*Id.* at 4.  Thus, the Anti-Fraud Unit, which oversees insurers' compliance with Fla. Stat. § 626.9891 and the implementing regulations in Florida Administrative Code 69d-2.002, *et seq*. explicitly

---

[3] In addition to these requirements and guidance, Florida law provides for fines and the potential for the suspension or revocation of licenses in the event that an insurer fails to comply with the requirements that it establish and implement an anti-fraud plan.  Fla. Stat. § 626.9891(8); Fla. Admin. Code § 69D-2.005(2).  The statutory scheme also provides immunity from civil liability for an insurer's good faith reporting of potential fraud.  Fla. Stat. § 626.989(2)(c).

suggests that insurers use data analytics to detect insurance fraud.[4]

## II. Plaintiffs' Allegations

### A. State Farm's Purported "Scheme"

Plaintiffs allege that the "heart" of State Farm's supposed "scheme" is an "invented accusation of 'non-individualized' care … identified through massive retrospective data analysis revealing 'patterns' across hundreds of past patient records of a targeted medical provider which are statistically 'not credible' and therefore indicate that all past treatment by the medical provider was entirely fraudulent." Doc. 1 ¶ 4. Plaintiffs contend that State Farm "knows" that such accusations are "without basis in law, fact or science, as patterns of statistically similar diagnoses and therapy in chiropractic treatment of auto accident victims" invariably "are entirely reflective of the standard of care which is most appropriate for such patients." *Id.* ¶ 5. State Farm supposedly "manufactures" these "false accusations of fraud" to destroy providers' practices, intimidate other doctors, and reduce the ability of claimants to "pursue the true value" of their bodily injury and uninsured motorist claims. *Id.* ¶ 6.

### B. The Factual Allegations Pertaining to Plaintiffs

Plaintiffs allege in conclusory terms that State Farm has "targeted Plaintiffs" with its "illegal scheme." Doc. 1 ¶ 7-12. But, the only specific allegations pertaining to the Plaintiffs are:

---

[4] In keeping with its statutory obligations, State Farm has pursued fraud claims against providers when warranted and obtained jury verdicts on those claims. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714 (11th Cir. 2011) (affirming jury verdict in favor of State Farm after State Farm presented extensive evidence of pervasive billing fraud at trial when provider gave predetermined diagnoses and treatments that nearly exhausted the patients' $10,000 in PIP benefits). Moreover, contrary to Plaintiffs' suggestion that State Farm must investigate fraud before making an initial payment within 30 days of submission of a claim, the Florida PIP statute permits an insurer to assert that a claim was fraudulent even after initially making payment. *State Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665, 669-70 (11th Cir. 2014) (citing Fla. Stat. §627.736(5)(b)1.c).

- At some date prior to February 20, 2020, State Farm opened a "project" within its MCIU devoted to investigating fraud on the part of Plaintiffs.  Doc. 1 ¶ 166.  State Farm conducted an "exposure analysis" of Plaintiffs' practice.  *Id.* ¶ 167.

- On February 20, 2020, a Holland & Knight attorney wrote to Plaintiffs indicating that State Farm has "issues of concern" with Plaintiffs' billing practices.  *Id.* ¶ 164.

- State Farm subsequently confirmed that the "issues of concern" are the "same statistical data points most commonly used by State Farm to investigate fraud based on an alleged "predetermined treatment plan."  *Id.* ¶ 165.

The rest of the complaint consists of generalized allegations, divorced of any specific factual context, that have no bearing on any purported dispute between State Farm and Plaintiffs. *See* Doc. 1 ¶¶ 49-57 (allegations concerning State Farm's size and financial condition); ¶¶ 58-71 (allegations regarding supposed "intentional shift" in State Farm's business strategy 25 years ago); ¶¶ 72-77 (allegations that the Florida Legislature and various insurance trade associations are in on the conspiracy to get rid of chiropractic claims); ¶¶ 78-85 (allegations that State Farm uses the threat of accusations of a "predetermined treatment protocol" to force doctors to withdraw PIP suits); ¶¶ 86-110 (allegations purporting to provide the "truth" about chiropractic treatment of whiplash associated disorders suffered in auto accidents); ¶¶ 111-161 (generalized allegations purporting to describe State Farm's supposed scheme to destroy chiropractors in general).[5]  All these allegations are immaterial.  They shed no light on whether an actual, concrete controversy now exists between State Farm and Plaintiffs regarding whether these Plaintiffs submitted accurate

---

[5] Courts as long ago as 2011 ruled that the "ACE" program described in these paragraphs, in force from 1995-1997, was irrelevant even to then-current claim handling.  *See Chauvin v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 1810625 (E.D. Mich. May 11, 2011); *MedCity Rehab. Serv., LLC v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1875980 (E.D. Mich. May 3, 2013); *Lantz v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 6974856 (E.D. Mich. Dec. 9, 2014); *State Farm Mut. Auto. Inc. Co. v. Elite Health Ctrs, Inc.*, 2019 WL 2754653 (E.D. Mich. Jul. 2, 2019); *but see Akins v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 3204839 (E.D. Mich. Jul. 28, 2011).

bills to State Farm regarding specific reasonable, necessary treatment of particular State Farm insureds who were injured in auto accidents.

## ARGUMENT

### I. Plaintiffs Lack Standing Because Their Claims Are Premature

Article III of the Constitution grants federal courts judicial power to decide only actual "Cases" and "Controversies." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000) (citing *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998)). The doctrines of standing and ripeness, among other things, give meaning to the case or controversy requirement. *Id.* (citing *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 127 (D.C. Cir. 1996)). To satisfy the case or controversy requirement under the Declaratory Judgment Act, "a plaintiff must prove not only an injury, but also a 'real and immediate threat' of future injury in order to satisfy the 'injury in fact' requirement." *Barry v. Carnival Corp.*, 424 F. Supp. 2d 1354, 1356-57 (S.D. Fla. 2006), *aff'd*, 257 F. App'x 224 (11th Cir. 2007) (quoting *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004)).

Similarly, the ripeness inquiry asks "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Bowen*, 233 F.3d at 1340 n.7 (citations omitted). This doctrine "protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). It requires a determination of (1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration. *Id.* These related standards are not satisfied here.

Plaintiffs attempt to allege controversies regarding State Farm's use of statistical analyses as part of the procedures to fulfill its statutory fraud detection obligations. *E.g.*, Doc. 1 at ¶¶ 10, 173-75 (alleging controversies regarding whether State Farm's analyses "provide[ ] any plausible insight into the reasonableness and/or necessity of the services provided to any one patient," "provide any basis upon which to evaluate the reasonableness and necessity of treatment provided to any patient," and "provide[ ] any plausible inference that the treatment provided to any one patient was 'non-individualized' or 'fraudulent'"). And, Plaintiffs seek declarations that:

(a) "mere statistical similarities in the diagnoses and treatment of State Farm insureds by Plaintiffs in the past do not provide a plausible inference of 'non-individualized' and/or fraud in the treatment of any one patient;"

(b) "payment for future services of Plaintiffs cannot be denied based solely on their statistical similarity to past services;" and

(c) "State Farm has waived its right to challenge past payments made by Plaintiffs."

Doc. 1 at 32 (Wherefore clause); *see also id.* ¶¶ 173-182.

However, State Farm has not even informally accused Plaintiffs of committing fraud in even a single claim. It may never do so. The most Plaintiffs can say (and do say in the complaint) is that State Farm is conducting an internal investigation of Plaintiffs and that it has "concerns" about Plaintiffs' billing practices that may – or may not – give rise to later claims. Doc. 1 ¶¶ 164-165. In other words, this lawsuit is at best premature. And, because it is premature, this case fails to satisfy the ripeness doctrine and the requirement that Plaintiffs suffer the "real and immediate threat" of future injury necessary to satisfy Article III's "injury in fact" requirement.

*Moynihan v. West Coast Life Ins. Co.* illustrates the point. 607 F. Supp. 2d 1336 (S.D. Fla. 2009). There, the beneficiary on a life insurance policy sued the insurance company while it was

investigating whether the decedent had preexisting conditions that were hidden from the insurance company, which, if true, would void the policy. The beneficiary filed suit even though the investigation was in progress and the insurance company had not yet made a determination whether to deny the claim for benefits. This Court ruled that the case was not yet ripe: "When an insurance company exercises its statutory and contractual rights to review a clam, and has not made any determination as to its merits, the Court will not waste judicial resources and alter the Parties' contractual rights by making a premature adjudication of the same." *Id.* at 1337.

This Court also explained that allowing the insurance company to "employ due diligence and review his claim" caused no harm to the beneficiary "in any material sense." Although the beneficiary undoubtedly would have preferred to "clear the cloud of uncertainty that comes with awaiting the insurance company's determination," ameliorating "angst and uncertainty" did not give rise to an Article III claim. *Id.* at 1338-39. The Court added that a judicial determination before the investigation concluded would "unduly interfere" with the insurance company's rights, and in any event, "meaningful review" on the merits would benefit from a "full record." *Id.* at 1339; *see Jacqueline Norris Huggett v. Ironshore Specialty Ins. Co.*, 2018 WL 8359643, at *5 (S.D. Fla. July 18, 2018) (breach of contract claim not ripe when insurance company had not yet made final coverage determination and was still investigating the claim).

The same is true here. The fact that State Farm has expressed a "concern" to Plaintiffs about their bills may cause "angst and uncertainty" to Plaintiffs but it does not give rise to a declaratory judgment claim. Indeed, here, the threat of hardship is even more remote than in *Moynihan* because, unlike there, State Farm already has paid submitted claims and is engaging in a statutorily permitted retrospective analysis of the legitimacy of certain bills. And, the mere fact (as alleged in the complaint) that State Farm's SIU unit is conducting an investigation does not

provide the necessary concreteness or immediacy of a threat of injury. As the court pointed out in *State Farm Mutual Automobile Insurance Co. v. Stavropolskiy*, 2018 WL 4680241, at *3 (E.D. Pa. Sept. 28, 2018), and contrary to Plaintiffs' conclusory allegations, *see* Doc. 1 ¶ 176, the mere fact that State Farm referred an investigation of possible fraud to its SIU unit does not amount to a determination by State Farm that fraud in fact has been committed. This may – or may not -- be the ultimate conclusion reached, but as in *Moynihan*, a premature court determination would "unduly interfere" with State Farm's investigative obligations, and a merits inquiry would "benefit from a full record." 607 F. Supp. 2d at 1339.[6]

Because the complaint is premature, it fails to satisfy the standing and ripeness doctrines required for a case or controversy to exist. For this reason, the complaint should be dismissed.

## II. Plaintiffs' Requested Declarations Raise Factual Disputes Not Suitable For A Declaratory Judgment

Plaintiffs' claims are further not suited for a declaratory judgment action because their resolution will be fact-intensive. "[D]eclaratory relief is inappropriate where it requires the court to make factual determinations regarding past conduct." *Pediatrix Med. Grp. of Fla. v. Aetna, Inc.*, 2018 WL 4997092, at *6 (S.D. Fla. Aug. 27, 2018). Thus, "[c]ourts have generally held that dismissal of a claim for declaratory relief is proper when it is apparent on the face of the complaint that the real dispute is a factual one." *Espandon Grp., Inc. v. Lexington Ins. Co.*, 2017 WL 5644602, at *3 (S.D. Fla. Mar. 1, 2017) (citing *Tobon v. Am. Sec. Ins. Co.*, 2007 WL 1796250, at *2 (S.D. Fla. June 20, 2007); *Girard v. Am. Sec. Ins. Co.*, 2016 WL 4264054, at *2 (S.D. Fla. Aug. 12, 2017); *Pub. Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 246 (1952)).

---

[6] Nor does the fact (as again alleged in the complaint) that State Farm has retained counsel mean this dispute is ripe. In *Stavropolskiy*, the court stated that the retention of outside counsel did not, on its own, signal that State Farm had actually discovered the complex fraud scheme as of the date of retention. 2018 WL 4680241, at *4. The same is true here.

10

In that vein, "[c]ourts have repeatedly rejected claims seeking declarations that an insurer's system of determining reasonable charges is unlawful." *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostics, Inc.*, 2014 WL 11906619, at *3 (S.D. Fla. July 15, 2014) (citing *Shenandoah Chiro., P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283, 1285-86 (S.D. Fla. 2007)); *State Farm Mut. Auto. Ins. Co. v. Sestille*, 821 So. 2d 1244, 1245-46 (Fla. 2d DCA 2002); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1208 (M.D. Fla. 2010)).

Despite this legion of cases, Plaintiffs ask this Court to make fact-intensive inquiries into the role of State Farm's statistical analyses. Plaintiffs seek to preclude the use of statistical analysis in any manner in the evaluation of a given claim, *see* Doc. 1 ¶ 10 (asserting that retroactive statistical analysis provides no "plausible insight into the reasonableness and/or necessity of treatment provided by Plaintiffs *to any one patient*"); ¶ 171 ("a retrospective statistical analysis of treatment records overall provides no plausible insight into the reasonableness and/or necessity of treatment provided *to any one patient*"); ¶ 174 (alleging "controversy" as to whether statistical analysis "can provide any basis upon which to evaluate the reasonableness and necessity of treatment provided *to any patient* in the future); ¶ 175 (alleging "controversy" regarding whether retrospective data analysis showing statistical similarities provides "any plausible inference that the treatment provided *to any one patient*" was non-individualized or fraudulent). Plaintiffs ignore the fact that any testing of these allegations would necessarily involve individual evaluation of "the reasonableness and necessity of treatment provided" to individual patients.[7] Thus, the role its

---

[7] Plaintiffs' allegations are also based on a misunderstanding of how State Farm actually uses statistical analysis. When State Farm prosecutes affirmative litigation, it does not use statistical analysis as the sole basis for a determination that claims are fraudulent. It uses statistical analysis as a starting point to detect fraud, and once that analysis shows a pattern suggesting non-individualized treatment, it undertakes an individual review of patient's files.

11

statistical analysis plays in State Farm's fraud investigation cannot be determined without delving into the facts of each bill that ultimately may be at issue.

For these reasons, this Court and others repeatedly dismiss requests for nearly identical relief.  *E.g.*, *Shenandoah Chiropractic,* 526 F. Supp. 2d at 1285 (dismissing claim for declaration that insurer's use of computer program to determine "reasonableness" of charges was improper because it raised factual issues that had to be determined on a case-by-case basis rather than through an across-the-board declaration); *B&A Diagnostics*, 2014 WL 11906619, at *3 (dismissing counterclaim for declaratory judgment regarding State Farm's "claims practices and payment policies" because such determinations under the PIP statute are fact intensive and thus not suitable for declaratory relief); *Sestile*, 821 So. 2d at 1245-46 (reversing declaratory judgment regarding State Farm's "use of a computer-generated database" to determine reasonableness of medical bills under PIP statute because determination must be made on a case-by-case basis given that "a computer database may accurately assess the 'reasonableness'");[8] *Pediatrix*, 2018 WL 4997092, at *2-3, 5-8 (dismissing with prejudice complaint because it sought declarations regarding factual issues concerning whether "evidentiary weight of Defendants' regression analyses is sufficient to support their affirmative claims against Plaintiffs relating to alleged billing fraud" and "care provided by [Plaintiffs] to Defendants' insureds was medically necessary"); *see also Hanson*, 2017 WL 3189026, at *1-2 (denying leave to amend counterclaim seeking to allege that State Farm's "claims processing model [ ] arbitrarily flags as fraudulent all insurance claims from chiropractors

---

[8] The analysis under the Florida Declaratory Judgment Act and the federal Declaratory Judgment Act is the same.  *Incredible Invs., LLC v. Fernandez-Rundle*, 984 F. Supp. 2d 1318, 1324 n.1 (S.D. Fla. 2013) (citations omitted).

treating 'Minor Impact, Soft Tissue' [ ] related to automobile accidents, in order to avoid the substantial cost of covering those claims").[9]

This Court's decision in *Pediatrix* is particularly instructive. There, after an insurer (not State Farm) accused the plaintiffs of fraudulent billing practices, the plaintiffs sought declaratory judgments that the insurer's use of statistical analyses to determine potential fraudulent billing by medical providers was improper. 2018 WL 4997092, at *1-2. In particular, the plaintiffs alleged:

> [The insurer] premise[d] its accusation [of fraudulent billing] upon the results of statistical regression analyses performed by attorneys and experts hired by [the insurer], without a review of the underlying medical records. Based upon the results of their analyses, [the insurer] approached [the plaintiffs], demanding that they refund the alleged overpayments and threatening litigation.

*Id.* at *2. The plaintiffs asserted that the insurer's actions were a "'back-door means to deny the insurance claims [the plaintiffs] submitted: seeking in essence to recoup the payments made for prior claims through extortionate demands or frivolous litigation." *Id.* Based on those allegations, the plaintiffs sought declarations: (1) "'regarding the validity and legality of [the insurer's] regression methodology to justify its accusations of alleged improper billing'"; and (2) "that [the

---

[9] *See also Girard*, 2016 WL 4264054, at *2-3 (dismissing request for declaration concerning "whether the methodology used by Defendant is accurate and whether it is a proper method" to determine cost of coverage under insurance policy or Florida law because relief sought raised factual dispute and asked court to weigh evidence in issuing declaration); *Espadon Grp., Inc. v. Lexington Ins. Co.*, 2017 WL 5644602, at *2-3 (S.D. Fla. Mar. 1, 2017) (dismissing declaratory judgment claim that asked the court to resolve factual issues and weigh evidence concerning the parties' obligations under an insurance contract); *see Young v. Lexington Ins. Co.*, 2018 WL 7572240, at *3-4 (S.D. Fla. Dec. 6, 2018) (recommending dismissal of complaint seeking declaratory judgment regarding coverage and valuation of claim under insurance policy because it involved factual dispute), *adopted*, 2019 WL 1112274 (S.D. Fla. Jan. 9, 2019); *see also ABC Univ. Shop, LLC v. Scottsdale Ins. Co.*, 2018 WL 6271839, at *4-7 (S.D. Fla. Oct. 18, 2018) (recommending dismissal of claim for declaration that insurer waived challenge to coverage by not "promptly investigating, adjusting, issuing payment and/or otherwise performing as required by the Policy and/or governing Florida law" because dispute involved factual issues concerning coverage and valuation of loss), *adopted*, 2018 WL 6267943 (S.D. Fla. Nov. 30, 2018).

insurer's] are [not] entitled to recoupment or reimbursement for payments made to [the plaintiffs]" and the care at issue was "medically necessary[.]" *Id.* at *5-6.

In addressing the plaintiffs' claims for declaratory relief, the Court explained:

> [T]he Plaintiffs seek relief that would require factual conclusions regarding their past conduct. In essence, Plaintiffs ask this Court to declare that the evidentiary weight of Defendants' regression analyses is insufficient to support their affirmative claims against Plaintiffs relating to the alleged billing fraud. But this contention is inappropriate for declaratory relief. If the Aetna entities believe in good faith that Plaintiffs have overbilled, they are entitled to seek redress by asserting claims against Plaintiffs. And, like any other litigants, they may present (admissible) expert analyses in support of their claims. *See* Fed. R. Evid. 702, 703. Whether such analyses are persuasive enough to sustain those claims in the absence of direct corroborating evidence is a question for the trier of fact. The Court refuses to short-circuit the process by declaring, as a matter of law, that the analyses are inadequate.

*Id.* at *6. Consequently, the Court dismissed the declaratory relief claims because they would require fact-intensive analyses that were improper for a declaratory judgement.

Given that Plaintiffs here seek the same relief that this Court has repeatedly, in numerous analogous cases, found to be improper, the Court should follow suit and dismiss the Complaint.

### III.    Plaintiffs Fail To State A Plausible Claim Under *Twombly*

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Threadbare recitations of the elements of a claim supported only by conclusory statements will not suffice. *Id.* Neither will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Rather, a plaintiff must allege some facts to raise the allegations above the level of mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As noted above, Plaintiffs ask this Court to declare that State Farm's statistical analyses are irrelevant and

14

cannot be used as evidence of fraud. *Supra* at 8. Such a claim is implausible and fails to rise about the level of speculation for several reasons.

### A. Plaintiffs' Theory Of The Case Cannot Support A Claim As A Matter Of Law

Plaintiffs ignore the myriad cases in which State Farm survived, as a matter of law, legal challenges to its use of statistical evidence as one preliminary step in its evaluation of the potential for fraud followed by more detailed individual claims evaluation. *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiro., LLC*, 2019 WL 4722675, at *5 (D. Md. Sept. 25, 2019) (State Farm's proposed amended complaint alleging both substantial similarities in patient records and internal inconsistencies, along with examples within patient records, sufficiently alleged fraud); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 573 (D. Md. 2019) (denying providers' motion to dismiss State Farm's fraud allegations based on statistical analysis and specific claims); *Hanson*, 2018 WL 1071657, at *2 (denying provider's motion for summary judgment).[10] Thus, Plaintiffs cannot, as a matter of law, obtain their requested relief.

---

[10] *See also State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, 2016 WL 2897427 (E.D. Pa. 2016) (denying motion to dismiss amended complaint alleging treatment records not uniquely tailored but predetermined), *subsequent opinion*, 2018 WL 4680241, at *4-5, 8 (E.D. Pa. Sept. 28, 2018) (denying summary judgment to provider on State Farm's fraud claims and granting partial summary judgment to State Farm on providers' claims that State Farm had no basis for denying claims on fraud basis); *State Farm Mut. Auto. Ins. Co. v. Ficchi*, 2012 WL 1578247, at *7 (E.D. Pa. May 4, 2012) (denying motion to dismiss amended complaint alleging fraud in predetermined treatment); *State Farm Mut. Auto. Ins. Co. v. Kugler*, 2011 WL 4389915, *1-2, 12 (S.D. Fla. Sept. 21, 2011) (denying motion to dismiss State Farm's fraud claims); *State Farm Mut. Auto. Ins. Co. v. Midtown Med. Center, Inc.*, 2005 WL 627969, *4-5 (E.D. Pa. Mar. 14, 2005) (after review of expert, deposition, and document evidence, denying chiropractic providers' motion for summary judgment on State Farm's claims that provider fraudulently billed State Farm for treatment never performed and concerning areas of the body not injured, engaged in "upcoding," billed treatment by non-physicians as if they were performed by a chiropractor, filed false and fraudulent medical claims); *State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr.*, 444 F. App'x 598 (3d Cir. 2011) (affirming jury verdict and judgment in favor of State Farm).

### B. Plaintiffs Have Not Pleaded Any Facts Regarding A Single Claim That They Contend Is Valid, Let Alone All The Claims Purportedly At Issue

Any claim by Plaintiffs that statistical evidence or data is irrelevant as a matter of law ignores the factual context that would be required to evaluate that proposition on a bill-by-bill basis. In fact, the complaint contains allegations that contradict a theory that statistical evidence can never be relevant to a claim. Plaintiffs admit that in at least some instances, pain from an auto accident is confined to a single body area, making the billing of treatment to multiple body areas improper. *See* Doc. 1 ¶ 89-90, 94, 124 (alleging that "***virtually every*** auto accident in which injury is reported," this pain is diffuse throughout all four regions of the spine; it is "***almost*** never" "confined to a single body area or single spinal region"). These allegations alone destroy any contention Plaintiffs may make that "statistical similarities" cannot, as a matter of law, "provide a plausible inference" of fraud or improper billing.

Yet, Plaintiffs offer no allegations regarding a single assignment received from a State Farm insured, the injuries allegedly suffered by a single insured, the treatment plan for a single insured, why any treatment plan was appropriate or medically necessary, or why the amounts billed were proper. These failures are particularly problematic because "'[d]eclaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own.'" *Padilla*, 391 F. Supp. 3d at 1119-20 (quoting *Eveillard v. Nationstar Mortg., LLC*, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015) and collecting cases dismissing claims for declaratory relief that did not allege an underlying cause of action). As a result, Plaintiffs have not adequately alleged any facts even remotely resembling a claim that a statistical analysis has no bearing on the appropriateness of State Farm's fraud detection procedures.

### C. State Farm's Compliance With Florida's Fraud Detection Laws Is Not Actionable

While they litter their allegations with superfluous attacks in an attempt to color as nefarious State Farm's compliance with its legal obligations, Plaintiffs have merely described State Farm's legally mandated fraud detection procedures. *E.g.*, Doc. 1 ¶¶ 115-29, 147-57 (alleging use of red flag indicators, use of computer-assisted data analysis, and specialized unit for fraud review). This is insufficient to state a plausible claim. Indeed, if Plaintiffs have their way, they would obtain a declaration or injunction prohibiting State Farm from complying with Florida's fraud detection laws. *See* Doc. 1 ¶¶ 173-81, *id.* at ¶ 182 (alleging "State Farm should further be enjoined entirely from using retrospective statistical analyses and/or patterns of treatment and diagnoses across a universe of patients as the sole basis upon which to deny payments").

This case is conceptually indistinguishable from *State Farm Mutual Automobile Insurance Co. v. Peter J. Hanson, P.C.*, 2017 WL 3189026 (W.D. Wash. Jul. 27, 2017). There, State Farm sued a chiropractic provider for submitting false insurance claims by using a predetermined course of treatment for patients without regard for the patients' actual needs. *Id.* at *1. The provider filed a counterclaim for, among other things, a declaratory judgment, which the court dismissed. *Id.* The provider then filed a motion for leave to file an amended counterclaim, which alleged (as here) that State Farm had adopted a claims processing model that arbitrarily flagged as fraudulent all insurance claims from chiropractors treating "Minor Impact Soft Tissue" (MIST) claims related to auto accidents in order to avoid the substantial cost of covering those claims. *Id.* The court denied the motion on *Twombly* grounds. It observed that State Farm, as a licensed insurer, was required by law to report instances of suspected insurance fraud to the state insurance commission. It also observed that the provider's allegations were "consistent with a good-faith investigation of

suspected insurance fraud." *Id.* at *2. Therefore, the provider's allegations were "merely *possible* rather than plausible." *Id.* (internal citation omitted).[11]

Here as in *Hanson*, the law in this Circuit is "well settled" that "insurers like State Farm are not obligated to pay bills submitted by a clinic that is operating unlawfully." *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 2020 WL 1063004, at *18 (S.D. Fla. Mar. 5, 2020); *see also State Farm Fire & Cas. Co. v. Silver Star Health & Rehab.*, 739 F.3d 579, 584 (11th Cir. 2013) ("Under Florida law State Farm was entitled to seek a judicial remedy to recover the amounts it paid Silver Star and to obtain a declaratory judgment that it is not required to pay Silver Star the amount of the outstanding bills"); *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343, 1356 (S.D. Fla. 2015) (granting declaratory relief on insurer's motion for summary judgment where insurer established defendant clinics submitted bills for services that were not lawfully provided as required"). Indeed, as discussed above, State Farm has a statutory obligation to investigate and ferret out insurance fraud. *See supra* at 2-5.

Further, Plaintiffs' requested relief would put the Court directly at odds with Florida's Legislature and Department of Financial Services and would put State Farm in an untenable Catch-22. State Farm would potentially have to choose between complying with an order that it violate Florida statutes and regulations, thereby subjecting it to possible fines and suspension of its license, or comply with Florida law, thereby potentially subjecting it to contempt of court. *See Ne. Savings, F.A. v. Director, Office of Thrift Supervision*, 770 F. Supp. 19, 24 (D.D.C. July 16, 1991) ("the

---

[11] *See also State Farm Mut. Auto. Ins. Co. v. Hanson*, 2018 WL 1071657, at *2 (W.D. Wash. Feb. 27, 2018) (denying provider's motion for summary judgment because "a reasonable jury could find that [providers] made knowingly false statements regarding reasonableness and necessity in order to maximize charges and insurance reimbursements" and State Farm "subsequently discovered [after payment] that the diagnoses were fabricated and overstated in order to justify treatment plans that maximized insurable events").

injunctive relief requested in this case . . . cannot be granted because it is contrary to federal law. Plaintiffs seeks, in essence, an order permitting plaintiff, and requiring defendants, to violate statutory and regulatory requirements.  And even if plaintiff's claims prove to be meritorious, a court may not, based upon a contract, issue an injunction that orders a violation of the law.").

It remains only to note that Plaintiffs' conclusory *ad hominem* attacks cannot turn State Farm's legally required procedures into actionable conduct.  As the *Hanson* court explained:

> As [the State Farm entities] point out, their actions as alleged are consistent with a good-faith investigation of suspected insurance fraud.  And defendants' allegations regarding the plaintiffs' wrongful *motivation* for investigating [defendant] – specifically that the insurers fabricated a pattern of insurance fraud solely to avoid the expense of covering the significant number of claims from [the defendant's office] – are entirely conclusory.

2017 WL 3189026, at *2.

### IV. The Court Should Strike Plaintiffs' Request For Attorneys' Fees

The Declaratory Judgment Act does not provide a basis for the award of fees, and a court should strike baseless requests for attorneys' fees.  *Blue Heron Beach Resort Developer, LLC v. Branch Banking & Trust Co.*, 2013 WL 12161819, at *11 (M.D. Fla. Aug. 2, 2013) (striking request for attorneys' fees based on claim for declaratory relief because the Declaratory Judgment Act "does not by itself provide statutory authority to award attorney's fees") (internal quotation marks and citation omitted); *Auto-Owners Ins. Co. v. Donpat Gate Parkway, LLC*, 2017 WL 9834349, at *1 (M.D. Fla. May 25, 2017) (striking request for attorneys' fees where no viable basis for fees was alleged); *see Hon Realty Corp. v. First Am. Title Ins. Co.*, 2008 WL 11408453, at *5-7 (S.D. Fla. Jan. 17, 2008).

Here, Plaintiffs seek only declaratory relief under the Declaratory Judgment Act.  Doc. 1 at 30-32.  Nevertheless, Plaintiffs make a bald request for attorneys' fees, while providing no allegations even remotely suggesting that such an award could be appropriate under any authority.

*Id.* at 32 (requesting "such other and further relief this Court deems just and proper, including attorney's fees").  Given that the Declaratory Judgment Act does not provide a basis to award fees, and that Plaintiffs have not alleged other claims, the Court should strike Plaintiffs' request for fees.

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaint for declaratory judgment should be dismissed and their request for attorneys' fees should be stricken.

Respectfully submitted

*s/ Benjamine Reid*
Benjamine Reid
Florida Bar No. 183522
CARLTON FIELDS, P.A.
100 Southeast Second Street
Suite 4200
Miami, Florida  33131-9101
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055
Email:  bried@carltonfields.com

D. Matthew Allen
Florida Bar No. 866326
CARLTON FIELDS, P.A.
Corporate Center Three
at International Plaza
4221 W. Boy Scout Boulevard
Suite 1000
Tampa, FL 33607
Telephone:     (813) 223-7000
Facsimile:      (813) 229-4133
Email:  mallen@carltonfields.com

***Attorneys for Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company***

121680948.6