IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:20-cv-60504-CIV-ALTMAN/Hunt

NORTHSIDE CHIROPRACTIC, INC., *et. al.,*

    *Plaintiffs*,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, *et. al.*,

    *Defendants*.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs state the following in opposition to Defendant's Motion to Dismiss:

**I.**     **STATE FARM'S MOTION IS MISTRUTHS AND MISCHARACTERIZATIONS**

State Farm's Motion to Dismiss is a mishmash of mistruths and mischaracterizations which, even in their inapplicability to Plaintiffs' Complaint, essentially admit the accuracy of the allegations contained therein.  State Farm even impliedly admits that the specific declaratory relief Plaintiffs seek is entirely appropriate.  State Farm refuses, however, to simply accept the entry of the judgment Plaintiffs seek because it needs to preserve the fiction that its self-serving *opinion* about the import of statistical similarities across hundreds of chiropractic patients, in and of itself, plausibly demonstrates fraud in the treatment of each individual patient.

  Contrary to Plaintiffs' red herring arguments and misapplications of caselaw, the declaratory judgment Plaintiffs seek is neither "implausible" nor "premature."  Nor would the judgment sought in any way affect State Farm's ability to use statistical analysis to investigate or prosecute fraud lawsuits.

Plaintiffs do not seek a declaration that they have not committed fraud, nor do they seek a declaration that State Farm cannot accuse them of fraud.  Rather, Plaintiffs seek a declaration that State Farm's *opinion* about the import of statistical similarities is not "factual content" sufficient to render plausible the accusations of fraud State Farm has made.

1

As detailed below, Plaintiffs cannot obtain the relief it seeks in any way other than through its declaratory judgment action, and the fallacious premises upon which State Farm's Motion is constructed actually help crystallize why this is so.

### A. THE CENTRAL MISTRUTH: "STATE FARM DOES NOT USE STATISTICS ALONE TO ALLEGE FRAUD"

State Farm rests the credibility of its entire Motion on the following representation to the Court: **"When State Farm prosecutes affirmative litigation, it does not use statistical analysis as the sole basis for a determination that claims are fraudulent."**  (ECF 12, pg. 11).

State Farm offers this denial of Plaintiffs' allegations as the foundation for its argument that the declaratory relief sought by Plaintiffs is premature and implausible.  In doing so, State Farm actually avers to this Court that it has not ever and would not ever file a massive federal lawsuit alleging that Plaintiffs have committed fraud in their past treatment of hundreds of patients based solely on a statistical analysis.

In order to appreciate just how blazingly untrue this representation is, one need only turn to the case State Farm cites at page 15 of its Motion, State Farm v. Carefree Land Chiropractic, 18-cv-1279 (D. Md., filed 5/1/18).   The representations State Farm made in that case to the Maryland District Court, and the Court's Opinion dismissing State Farm's Complaint with prejudice, directly demonstrate that State Farm's averment to this Court about its use of statistical analysis to justify fraud claims is simply false.

### 1. *State Farm v. Carefree Land Chiropractic* Establishes State Farm's "Willingness and Preparedness" to Follow Through on Its Threat to Sue Plaintiffs Based Solely on Alleged Statistical Similarities Across the Charts of Thousands of Patients

In Carefree, State Farm sued multiple chiropractic practices in Maryland and Virginia alleging fraud in the treatment of 550 State Farm insureds over a period of more than 10 years *solely on the basis of a statistical analysis*.  State Farm alleged in its Complaint against the Carefree defendants:

> **These types of widespread findings are not credible and are highly implausible across such a wide variety of patients, for whom age, pre-existing conditions, type of accident, mechanism of injuries, and a host of other important factors, vary markedly.  Instead they reflect predetermined physical**

> **examination and radiographic interpretation results for patients.**[1]

Plaintiffs in this case allege that the above is the precise accusation State Farm is threatening to lodge against Plaintiffs; that it has no factual basis; and that it is directly at odds with the consensus of scientific literature and the patterns revealed by the data in State Farm's own claim files. (See Complaint, ECF 1, ¶4-11, 86-106).

The chiropractic practice defendants in Carefree moved to dismiss State Farm's Complaint against them on the basis that inferences drawn from a statistical analysis provided no plausible insight into whether the treatment provided to any one of the patients had been fraudulent.

In response to the motion to dismiss, and *directly contrary to its representations to this Court*, State Farm argued that its statistical analysis across a universe of 550 patients, in and of itself, did in fact form the plausible basis for an accusation of fraud in the treatment of every single patient within the universe.[2] Therein State Farm averred:

- **"[The Doctors'] argument is flawed in suggesting that the State Farm Entities' statistical analysis regarding data across hundreds of claims is somehow insufficient to satisfactorily communicate the basis of fraud alleged in the Complaint." (Pg. 3);**

- **"The statistics demonstrate the fraudulent nature of the records." (Pg. 7);**

- **"The statistics establish the fraudulent nature of the records when examined together." (Pg. 14).**

In short, State Farm told the Maryland District Court exactly what Plaintiffs allege it has told them: that its statistical analysis of past treatment records, in and of itself, demonstrates that every patient's treatment was entirely fraudulent. The Maryland District Court disagreed, however, with State Farm's opinion as to the reasonable inferences which could be drawn from its statistical analysis and granted the defendants' Motion to Dismiss, stating:

> **State Farm provided no factual basis, <u>aside from its own statistical analysis</u>; for the court to conclude that every single**

---

[1] See ¶63 of State Farm's Complaint in Carefree, ECF Doc. 1, 18-cv-1279 (D. Md., filed 5/1/18).

[2] 18-cv-1279, ECF Document 44-1.

3

> **record provided by Carefree for each of the 550 patients plausibly constituted fraud. Instead, <u>State Farm later argued that its statistical analysis singularly "demonstrate[d] the fraudulent nature of the records</u>," ECF 44-1 at p. 11, requiring the court to assume that the statistical findings only could be explained by fraud."**

The Court's opinion, which, tellingly, was not cited by State Farm's Motion in this case, is reported at <u>State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC</u>, 2018 WL 6514797, at *3 (D. Md. Dec. 11, 2018), <u>reconsideration denied,</u> 2019 WL 4722675 (D. Md. Sept. 25, 2019).

In short, contrary to its averments to this Court, State Farm *has* filed massive, affirmative federal litigation alleging fraud against chiropractic practices based *solely* on an opinion that statistical similarities across hundreds of patient charts *alone* plausibly demonstrates fraud was committed in the treatment of each individual patient.  State Farm even doubled down on its pleading by representing to the Court in defense of its allegations that its statistics <u>alone</u> were enough "to demonstrate the fraudulent nature of the records."

State Farm's own words in the <u>Carefree</u> litigation expose as completely false its central representation to this Court that it would not ever and has not ever filed affirmative litigation alleging fraud based solely on statistics.  State Farm's own words in the <u>Carefree</u> litigation alone destroy the credibility of its argument that Plaintiffs' request for declaratory relief is somehow "implausible" or "premature."

But what happened next in the <u>Carefree</u> litigation *after* State Farm's Complaint was dismissed cements why and how State Farm's threat against Plaintiffs in this case creates a present controversy which jeopardizes Plaintiffs' very existence.

> **2.   State Farm's Use Its Statistical Analysis to Establish the Plausibility of Its Fraud Accusation Even When "More Detail" Is Added**

After its Complaint in <u>Carefree</u> was dismissed with prejudice, State Farm moved for permission to file an amended complaint.  The Maryland District Court's opinion permitting State Farm to do so (the one actually cited by State Farm in its Motion to Dismiss), reveals why there is very much a present and ripe controversy between the parties in this case.

After reviewing State Farm's proposed amended complaint, the Court found:

> **In its proposed amended complaint, State Farm still relies mainly on the substantial similarities between the patient records to plead its allegations of fraud. State Farm, however,**

4

> **adds more detail to the allegations of substantial similarities, including by providing examples of patients with virtually identical descriptions of pain,** *see* **proposed amended complaint, orthopedic test results, neurological test results, cervical spine x-ray results, treatment plans, and responses to the treatment plans.**

State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC, No. 18-CV-1279, 2019 WL 4722675, at *3 (D. Md. Sept. 25, 2019) (internal paragraph citations omitted).

Acknowledging it to be a "close call," the Court found that the amended complaint plausibly alleged fraud based on State Farm having added "detail" to the allegations of statistical similarities. Id. at *5. But this added detail was really just individual examples of patient care which State Farm characterized as unreasonable or unnecessary. It was the statistical patterns, alleged in and of themselves to indicate something nefarious, which permitted State Farm to cast the treatment of all 550 patients as fraudulent. Because of the requirement to accept as true facially well-plead factual allegations at the Motion to Dismiss stage, the Court was required to accept as true State Farm's foundational "factual" premise that the substantial similarities identified by its statistics actually did indicate something nefarious.

This is why there exists a present, ripe controversy between the parties in this case. Even if not offered as the *sole* basis for an allegation of fraud, State Farm alleges that statistics evidencing "substantial similarities" across a universe of auto accident patients *in and of themselves still indicate something nefarious*. Whatever additional allegations State Farm may add *anecdotally* about individual patient treatment in a Complaint, it is the statistical analysis which State Farm always points to as the factual foundation establishing the plausibility of its accusation that fraud was committed in the treatment of *every* patient.

This is the crux of the controversy in this case. Plaintiffs allege that statistical similarities, such as those listed by the Court in Carefree as making a fraud allegation plausible, are not in fact nefarious, but are instead evidence that chiropractic care has actually been rendered in accordance within the generally accepted standard for the treatment of auto accident patients. (ECF 1, ¶86-106). Plaintiffs seek to demonstrate that substantial similarities in treatments, diagnoses, and test results in chiropractic treatment of a universe of auto accident patients do not provide any plausible inference of fraud as to the treatment of any patient within the universe, whether the statistics are offered alone or in conjunction with anecdotal references to just a few patients.

5

There would be no meaningful opportunity for Plaintiffs to offer this proof if they have to wait to be sued by State Farm in order to do it.  As demonstrated by the sequence in the Carefree case, even if Plaintiffs manage to expose a State Farm fraud lawsuit as based on nothing more than an opinion as to the implications of statistical similarities, under the notice pleading requirements, Courts are obliged to permit such cases to proceed so long as State Farm avers that the statistical similarities "are not credible and are highly implausible across such a wide variety of patients." *See* State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC, No. 18-CV-1279, 2019 WL 4722675, at *3.

Short of a declaratory judgment action, the specific issue of whether statistical similarities across a universe of chiropractic patients plausibly support an accusation of fraud in the treatment of any one patient will *never have a reasonable chance to be litigated*.  This is because, as pleaded by the Plaintiffs, once the fraud by statistics theory gets a Complaint past the pleading stage in a federal fraud action involving hundreds of patients over the course of years, the financial and reputational expense of even attempting to justify in retrospect the treatment of each patient is ruinous for any chiropractic office, and the doctors inevitably have no choice but to capitulate to State Farm's onerous settlement demands.  (ECF 1, ¶12, 109, 134, 139-140).[3]

It is clear from the Carefree case that, contrary to its representation to this Court, State Farm will not hesitate to allege fraud against Plaintiffs based on just its opinion about what its statistics mean.  But State Farm not only misrepresents its past litigation conduct, it also mischaracterizes the actual allegations of Plaintiffs' action.  State Farm tries to recast Plaintiffs' action as somehow seeking to limit State Farm's ability to investigate fraud.  This is simply not the case.

### B. STATE FARM BALDLY MISCHARACTERIZES PLAINTIFFS' ALLEGATIONS

State Farm argues that Plaintiffs Complaint seeks a declaration that statistical evidence can never be used to investigate fraud.  This is absurd.  Plaintiffs do not anywhere within their Complaint make any such allegation nor is it any part of the declaratory relief sought.

---

[3] The ruinous consequences Plaintiffs will suffer if sued by State Farm on the basis of nothing more than alleged implications of a statistical analysis are also a factor which demonstrates the existence of a controversy.  State Farm Mut. Auto. Ins. Co. v. Carter, 2008 WL 5740100, at *12 (W.D. Mich. Oct. 28, 2008).

6

Rather, Plaintiffs' Complaint alleges that State Farm intends to use its *opinion* as to the inferences which can reasonably be drawn from a statistical analysis as the false *factual* foundation of a destructive fraud accusation against Plaintiffs. Plaintiffs allege that State Farm has announced its intention to justify the plausibility of its threatened fraud accusation with nothing more than statistics showing similarities across the universe of Plaintiffs' past patient treatment, diagnoses, and test results, and to characterize as "fact" that the statistical patterns reveal all of Plaintiffs' treatment to have been "not credible."

The statistical similarities which State Farm alleges to be "not credible" are listed in paragraph 147 of the Complaint:[4]

- **That some high percentage of a targeted doctor's patients injured in auto accidents complain of pain in and/or receive treatment to multiple spinal regions (neck, upper back, mid back, and low back);**

- **Orthopedic tests conducted by the doctor on auto accident patients reveal a "pattern" of positive results in the neck, upper back, thoracic region, shoulder, lumbar, and buttocks area which are "similar across the patient population";**

- **Neurological tests conducted by the doctor on his auto accident patients reveal a "pattern" of positive results in the neck, upper back, thoracic, shoulder, lumbar and buttocks area which are "similar across the patient population";**

- **EMG, MRI, and x-ray testing reveal positive results in some high percentage of patients in the neck and back;**

- **A treatment plan consisting of passive modalities (heat and cold therapy, massage, spinal manipulation and traction) and exercises was provided to "virtually all patients"; and**

- **Reports reflecting that "virtually every patient" had residual weakness, predisposition to future injury and progressive arthritic degeneration.**

Contrary to State Farm's premise, however, Plaintiffs allege that the statistical similarities State Farm characterizes as "not credible" are in fact *very* credible, as they are wholly consistent

---

[4] Note that these are the same general similarities offered to the Court in Carefree. 2019 WL 4722675, at *3.

with the patterns shown by the data in State Farm's own claim files, the scientific literature, and the physiognomy of the human body. (ECF 1, ¶86-106).

In short, State Farm is entitled to maintain an *opinion* that statistical similarities signify something nefarious and conduct whatever investigations and file whatever lawsuits it feels are necessary as a result. What Plaintiffs seek simply is a declaration which will prevent State Farm from offering its *opinion* in pleadings as an established fact worthy of the Court's acceptance as true.

Plaintiffs allege that State Farm has threatened to file a massive federal fraud lawsuit against them and has indicated its intention to offer its opinion regarding the meaning of statistical similarities in Plaintiffs' past records as an established fact in order to make its accusation appear plausible. Plaintiffs' Complaint alleges in relevant part that:

- State Farm has informed Plaintiffs that statistical patterns in Plaintiffs' past treatment of potentially hundreds of patients over a period of years, in and of themselves, demonstrate that the diagnoses, treatment, and testing provided to each patient was entirely fraudulent. (See Complaint, ECF 1, ¶7);

- State Farm has represented to Plaintiffs that its statistical analysis alone entitles it to disgorge all past payments made to Plaintiffs and deny payments going forward. (ECF 1, ¶8-9);

- State Farm's fraud by statistics theory is a tool designed to avoid having to plead facts which plausibly demonstrate fraud in the treatment of any one patient. (ECF, ¶121-133);

- The fraud by statistics theory is also a tool which enables State Farm to lie in wait for years after it opens a "project" and allows supposed damages to build up against a doctor State Farm has decided to target with the theory, which State Farm did against Plaintiffs sometime prior to communicating its threats on February 20, 2020. (ECF 1, ¶152-156, 166-167);

- State Farm's fraud by statistics theory ignores and in fact contradicts the consensus of scientific literature which identify the statistical patterns and similarities which are to be expected in the chiropractic treatment of auto accident patients. (ECF 1, ¶86-110);

- State Farm has threatened to file a federal fraud lawsuit and block all future payments to Plaintiffs based solely on statistics unless Plaintiffs pay State Farm hundreds of thousands of dollars. (ECF, ¶168);

8

- State Farm hires specific law firms whose specialties are generating, threatening, and litigating federal fraud lawsuits against doctors, and State Farm hired one of these firms to communicate its threats to Plaintiffs. (ECF 1, ¶158-160, 164-165);

- The mere filing of and/or threatening to file a federal fraud lawsuit based on statistics alone has disgorged massive amounts of money and settlements from doctors who have also been forced to agree to stop billing State Farm directly and withdraw all claims for payments owed under State Farm's PIP coverage. (ECF, ¶139-140);

- State Farm's outsized influence and control over the private passenger auto insurance market in Florida is such that State Farm's threatened lawsuit on this basis would inflict vast damage on Plaintiffs. (ECF 1, ¶12, 49-56);

- A retrospective statistical analysis, standing alone, provides no plausible insight into the reasonableness and necessity of the treatment they provided to any one patient (ECF, ¶10).

As is evident and contrary to State Farm's mischaracterizations, Plaintiffs do not allege that State Farm is merely "conducting an internal investigation" and that it merely "has concerns about Plaintiffs' billing practices." (ECF 12, pg. 8). Rather, Plaintiffs specifically allege that State Farm has formulated a conclusion of fraud based on statistical patterns in Plaintiffs' past treatment of thousands of patients; that it has threatened to sue Plaintiffs on the premise that its opinion about the meaning of its statistics is a plausible factual basis upon which to allege fraud in each patient's treatment; that it has hired specialized counsel to communicate and carry out this threat; and, that the mere filing of the lawsuit will destroy Plaintiffs' practices.

The obvious purpose of State Farm's blatant mischaracterization of Plaintiffs' allegations is transparent. State Farm must do so in order to syllogize the applicability of a series of cases which have no connection on their facts to the true facts plead and relief sought by Plaintiffs' in this case. But comparing these cases to the <u>actual</u> facts alleged by Plaintiffs exposes State Farm's Motion as completely without merit.

### C. STATE FARM'S CITATIONS ARE SIMPLY INAPPOSITE TO THE FACTS

On the strength of its mischaracterizations of the actual facts alleged by Plaintiffs, State Farm parades a series of cases from various jurisdictions and characterizes them alternately as

"illustrative" and "instructive" and "conceptually indistinguishable." However, every one of these cases is only applicable to the alternative facts State Farm has invented, and none of them has any bearing on Plaintiffs' actual cause of action.

Examined below and exposed as inapplicable on their facts are the various lines of cases offered in support of each of State Farm's variable arguments.

### 1. Plaintiffs' Lawsuit is Not Premature

State Farm's first argument is that Plaintiffs lack standing because their claims are premature; therefore, they cannot prove an injury or a real or immediate threat of future injury. (ECF 12, p. 7). State Farm further argues that it "has not even informally accused Plaintiffs of committing fraud in even a single claim" and that "[i]t may never do so." (ECF 12, p. 8). "In other words," according to State Farm, "this lawsuit is at best premature. And, because it is premature, this case fails to satisfy the ripeness doctrine and the requirement that Plaintiffs suffer the "real and immediate threat" of future injury necessary to satisfy Article III's "injury in fact" requirement." (ECF 12, p. 8).

But what State Farm neglects to mention is the long-standing principle that "the entire purpose of the Declaratory Judgment Act is to provide a means for the plaintiff to precipitate a lawsuit which would otherwise wait until a cause of action accrued to the defendant." Hill Dermaceuticals, Inc. v. Anthem, Inc., 228 F.Supp.. 3d 1292, 1299 (M.D. Fla. 2017). In other words, the threat of a future lawsuit is sufficient to establish an actual controversy under 28 U.S.C. § 2201(a). Try as it might to brush under the rug its very real threat to sue Plaintiffs solely because of its *opinion* that its retrospective statistical analysis establishes a plausible basis for fraud, the effort fails because "courts have held that the possibility or threat of a future lawsuit is sufficient to establish the requisite case or controversy." State Farm Mut. Auto. Ins. Co. v. Bates, 542 F.Supp. 807, 817 (M.D. Ga. 1982); American Ins. Co. v. Evercare Co., 699 F.Supp.2d 1355, 1358 (N.D. Ga. 2010).

State Farm points to Moynihan v. W. Coast Life Ins., Co., 607 F. Supp. 2d 1336 (S.D. Fla. 2009) as "illustrative" of its argument that Plaintiffs' lawsuit is premature. In Moynihan, the Plaintiff filed suit alleging that his insurance company was dragging its feet in the investigation of his claim and sought a declaratory judgment as to what the outcome of the investigation should be. Id. at 1337 ("Plaintiff has filed suit, seeking declaratory judgment that he is owed the benefits under the policy.").

The Court quite correctly found that the plaintiff's action was premature as the insurance company had not yet completed its investigation and had not yet even made a determination as to whether to pay or deny the claim.  Id. at 1339 ("Until [defendant] exercises its rights under the policy to deny the claim, Plaintiff cannot maintain that there has been a breach or that his rights have been affected.").

Moynihan clearly does not apply to the facts alleged in this case, which are that State Farm has not only concluded its investigation and communicated its determination to Plaintiffs, it has hired specialized counsel and threatened to sue Plaintiffs in order to enforce its determination. Nothing about the Moynihan case is illustrative of anything at issue between the parties here.

Equally unavailing is State Farm's citation to State Farm v. Stavropolskiy, 2018 WL 4680241.  The opinion cited to was the Court's denial of the Defendant doctor's Motion for Summary Judgment on the statute of limitations.  The Court ruled that summary judgment would not be granted because it was possible a reasonable factfinder could conclude that merely referring an ongoing investigation of possible fraud to the SIU unit does not necessarily amount to a determination by State Farm that fraud has occurred so as to trigger the statute of limitations on the fraud claim.

Just as with Moynihan, the factual scenario of Stavropolskiy (not to mention its substantive and procedural posture), is of zero relevance to the facts alleged by Plaintiffs in this case.  First and most obviously, Plaintiffs are not alleging that State Farm is time-barred from accusing it of fraud.  More to the point though, Plaintiffs simply do not allege an *ongoing* investigation with an as-yet-to-be-made determination.  Plaintiffs allege, rather, that State Farm has concluded on the strength of mere opinion that Plaintiffs have committed fraud and have threatened to sue Plaintiffs solely on the basis of the opinion, which threat State Farm has communicated through a law firm it specially designates to prosecute such cases.

There is only one fact actually contained in Plaintiffs' Complaint that State Farm even mentions in support of its argument that Plaintiffs' lawsuit is "premature," and that is that State Farm *has not yet filed* its threatened lawsuit.  State Farm does not even attempt, however, to cite to any caselaw which supports the premise that one must wait to be sued in order for there to be a present controversy between the parties.  Nor could it, as the caselaw widely stands for the exact opposite proposition:

11

> **Though some affirmative act on the part of the declaratory judgment defendant is generally necessary in order to define the bounds of the conflict, there is no requirement that the defendant actually be able to sue the plaintiff at the time of the complaint. (internal citation omitted).** <u>**Nor will the forbearance from suit by a party protect it from being the defendant in a declaratory judgment action if the party has shown "a preparedness and willingness" to enforce its rights.**</u>

Geltech Sols., Inc. v. Marteal, Ltd., 2010 WL 1791423, at *2–3 (S.D. Fla. May 5, 2010)(emphasis added), *citing* SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1382–83 (Fed.Cir.2007) (Promise not to sue did not moot actual controversy created by course of conduct of declaratory judgment defendant). Again, as noted above, the threat of a future lawsuit is sufficient to establish an actual controversy under 28 U.S.C. § 2201(a). Hill Dermaceuticals, 228 F.Supp.. 3d at 1299; Bates, 542 F.Supp. at 817; Evercare., 699 F.Supp.2d at 1358.

As made clear by its actions in the Carefree case (and the many others cited within its own Motion to Dismiss), State Farm has shown an enthusiastic "preparedness and willingness" to accuse chiropractors of fraud based on its opinion that statistical similarities across past patients plausibly demonstrate fraud in the treatment of individual patients. In fact, the obviously high degree of State Farm's enthusiasm for filing such lawsuits is another factor which further demonstrates the existence of a present, ripe controversy between the parties. *See* Breckenridge Pharm., Inc. v. Everett Labs., Inc., 2009 WL 654214, at *2–6 (S.D. Fla. Mar. 11, 2009)("Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy.").

State Farm's prior litigation conduct, exemplified by the caselaw State Farm and Plaintiffs have cited, speaks for itself. When coupled with State Farm's employment of specific lawyers "who have built entire practice groups around generating, threatening, and litigating federal fraud lawsuits against doctors on behalf of State Farm"[5] to threaten Plaintiffs with its opinion-based fraud-by-statistics allegations, Plaintiffs face a very real threat as opposed to simply "angst and uncertainty." (ECF 12, p. 9).

State Farm's entire argument that Plaintiffs' lawsuit is premature is based on a mischaracterization that Plaintiffs' Complaint alleges an ongoing, unfinished investigation which

---

[5] ECF 1, ¶¶ 158-161, 164-165.

has not resulted in any determination. When the actual facts alleged are considered, however, it is clear that Plaintiffs have alleged a present controversy which is not in any way premature.

### 2. The Treatment Provided to Any One of Plaintiffs' Patients is Irrelevant to Its Request for Declaratory Relief

State Farm's mischaracterization of Plaintiffs' allegations is also the foundation of its erroneous argument that Plaintiffs' claims are "not suited for a declaratory judgment action because their resolution will be fact-intensive." (ECF 12, pg. 10).

State Farm avers that "Plaintiffs seek to preclude the use of statistical analysis in any manner in the evaluation of a given claim." (ECF 12, pg. 10). This is, quite simply, entirely false.

No part of the relief Plaintiffs seek would preclude the use of statistical analysis by State Farm in any manner in the evaluation of any claim. State Farm is and will remain entitled to its opinion (no matter how misguided and self-serving) about the inferences it wants to draw from a statistical analysis of a universe of chiropractic auto patient charts. Plaintiffs do not pretend that they (or any Court decree) can dissuade State Farm from its opinions or that they could stop State Farm from applying them in its evaluation of claims.

No, the relief Plaintiffs *actually* seek is a declaration which would prevent State Farm from using its *opinion* about the inferences it draws from statistical analyses, standing alone, as <u>factual content</u> sufficient to lend facial plausibility to fraud claims.

"A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Asbury v. Slider</u>, 2020 WL 871097, at *2 (M.D. Fla. Feb. 21, 2020), *citing* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2))(emphases added). The "plausibility standard requires that the allegations be more than merely conceivable." <u>Pavic v. Laser Spine Inst., LLC</u>, No. 8:13-CV-02578-EAK, 2014 WL 2707953, at *1 (M.D. Fla. June 13, 2014), *citing* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

Plaintiffs allege that State Farm has told them it has formed the *opinion* that a statistical analysis of Plaintiffs' treatment of thousands of past patients demonstrates that all of the treatment provided to each patient was entirely fraudulent, and has threatened to file a massive fraud lawsuit on this basis unless Plaintiffs pay State Farm hundreds of thousands of dollars and withdraw all demands for payment from State Farm now and forever into the future. (ECF 1, ¶163-169). The declaration Plaintiffs seek would only prevent this opinion from being accepted as the factual

content which would allow a court to draw the reasonable inference that Plaintiffs have committed fraud.

If Plaintiffs are successful in obtaining the declaratory judgment they seek, State Farm would still be free to use its fraud by statistics theory to investigate claims, deny claims, and even as the thing which leads them to discover and allege actual evidence of fraud. State Farm would only be prevented from using the theory as a stand-alone "fact" which makes a fraud claim plausible.

Once the true nature of the relief sought by Plaintiffs is made clear, it is easily understood as actually requiring a very narrow factual inquiry that has no similarity to the lawsuits in the cases relied upon by State Farm in its Motion.

The principal of the cases relied upon by State Farm is Pediatrix Med. Grp. of Fla., Inc. v. Aetna Inc., 2018 WL 4997092 (S.D. Fla. Aug. 27, 2018). This was actually dueling cases in multiple federal forums in which the parties were jockeying for Plaintiff status. Id. at *3. Aetna sued Pediatrix in the Eastern District Court of Pennsylvania and Pediatrix sued Aetna in the Southern District of Florida. Included in the suit filed by Pediatrix was a count for declaratory judgment.

The Court dismissed the declaratory judgment claim, stating "Plaintiffs essentially seek a declaration from this Court that their defenses to the causes of action asserted by the Aetna entities in the Pennsylvania Action are meritorious." Id. The Court held that Pediatrix was essentially asking for a declaratory judgment that it was entitled to summary judgment on Aetna's claims. Id. at *6 ("In essence, Plaintiffs ask this Court to declare that the evidentiary weight of Defendants' regression analyses is insufficient to support their affirmative claims against Plaintiffs relating to the alleged billing fraud.").

The facts of Pediatrix and the Court's analysis of them simply have no relevance to any aspect of this case. Plaintiffs do not seek a declaratory judgment that they have not committed fraud, nor that State Farm is not permitted to accuse them of fraud. As such, there is simply no aspect of Plaintiffs past conduct which needs to be examined in order to determine whether a statistical analysis showing the substantial similarities identified in paragraph 147 of Plaintiffs' Complaint creates a plausible inference of fraud in the treatment of any individual chiropractic auto patient.

14

For this same reason, none of the other cases cited by State Farm have any applicability to Plaintiffs' lawsuit.  These cases – State Farm v. B&A Diagnostics, Inc., 2014 WL 11906619 (S.D. Fla. July 15, 2014); Shenandoah Chiro., P.A. v. Nat'l Specialty Ins., Co., 526 F. Supp. 2d 1283 (S.D. Fla. 2007); State Farm v. Sestille, 821 So. 2d 1244 (Fla. 2d DCA 2002); MRI Assoc. of St. Pete, Inc. v. State Farm, 755 F. Supp. 2d 1205 (M.D. Fla. 2010) – as acknowledged by State Farm, each involved claims "seeking declarations that an insurer's system of determining reasonable charges is unlawful."  (ECF 12, pg. 11).

Again, Plaintiffs in this case do not seek a declaration that State Farm's opinion about the import of its statistical analyses is unlawful, or even that it is wrong.  Plaintiffs simply seek a declaration that State Farm's opinion in this regard does not in and of itself create a plausible inference of fraud in the treatment of individual patients.

The narrow inquiry required to make this declaration will deal solely with the literature and data revealing the statistical patterns of treatments, diagnoses, and testing which are generally provided in the chiropractic treatment of auto accident patients.  Plaintiffs detail at great length the factual bases for their contention that such statistical patterns have been identified in very specific epidemiological studies and, more importantly, in the data contained within State Farm's own vast claims database (all of which, it is mete to note, is available at the press of a button).  (ECF 1, ¶86-104.)  The limited factual inquiry necessary to resolve the issue in this case will largely consist of analyzing the patterns in the data which State Farm is already in unique possession of (and claims to have already analyzed many times).

Contrary to State Farm's argument, therefore, the Pediatrix case is not "particularly instructive" because its facts, and the facts of all other cases relied upon by State Farm, are simply inapposite to the facts alleged and relief sought by Plaintiffs in this case.

Even more inapposite, though, than the Pediatrix line of cases is State Farm's bizarre attempt to use as support for its Motion the Court's opinion in the case of State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson, P.C., 2017 WL 3189026, at *2 (W.D. Wash. July 27, 2017).

### 3. There Was No Declaratory Judgment at Issue in the *Hanson* Opinion

State Farm characterizes the allegations in this case as "conceptually indistinguishable from those which were sought to be made in Hanson," and suggests that the Court rejected the same claims as made by Plaintiffs "on Twombly grounds."  (*See* ECF 12, pg. 17).

15

Nothing could be further from the truth (except perhaps State Farm's other representations throughout its Motion). The counterclaim *originally* filed in Hanson included a count for declaratory judgment and consisted of a mere 13 paragraphs which alleged that State Farm had falsely accused the doctor of fraud and sought declaratory judgment that State Farm was wrong to deny the doctor's bills on that basis.[6]

In ruling on State Farm's Motion to Dismiss, the Court characterized the Hanson defendants' request for declaratory relief as expressing an "interest in being fully compensated for rendered and future medical services as well as injunctive relief that will prevent plaintiffs from refusing payment for rendered medical services." State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson, P.C., 2017 WL 1304445, at *5 (W.D. Wash. Feb. 3, 2017). The Court agreed with State Farm that the doctor had "not articulated with sufficient clarity the degree or kind of declaratory or injunctive relief" being sought and granted the motion to dismiss with leave to amend. Note that this is not the opinion cited by State Farm's Motion and the Court's reasoning as to the viability of the declaratory judgment pleaded in Hanson and it obviously has no bearing on this case. Nor does the opinion actually cited by State Farm in its Motion to Dismiss.

This is because when the Hanson Defendants sought leave to amend their counterclaim, *they did not include a count for Declaratory Judgment.* Rather, the proposed counterclaim asserted claims for libel/defamation, violation of the Washington Consumer Protection Act, and tortious interference with business expectancy. *See* State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson, P.C., 2017 WL 3189026, at *1 (W.D. Wash. July 27, 2017).[7] Each of these causes of action required proof of actual malice and State Farm argued that "because defendants have failed to plead sufficient facts to render allegations of *actual malice* plausible…their motion for leave to amend their counterclaims should be denied." Id. at *2 (emphasis added). The Court granted the motion "because defendants have failed to allege facts supporting an allegation of actual malice." Id.

In short, no aspect of the proposed counterclaim in Hanson was conceptually (or procedurally or substantively) on point with the facts of this case. Whether State Farm has acted

---

[6] See 2016-cv-1085, ECF Doc. 17, filed 9/15/16.

[7] This is the opinion cited by State Farm's Motion.

16

with actual malice in developing its fraud by statistics theory or in targeting Plaintiffs in this case has no relevance to the declaratory relief sought by Plaintiffs.

Plaintiffs in this case do not seek a declaration that State Farm has concocted its fraud-by-statistics theory out of malice, but rather simply that the theory itself is just plain concocted.

### D.     STATE FARM'S DISSERTATION ON ITS DUTY TO INVESTIGATE FRAUD IS WELL-TAKEN…AND COMPLETELY IRRELEVANT

State Farm spends the first 5 pages of its Motion describing the valiance with which it fights the scourge of PIP fraud in Florida and the statutory regime which compels it to the battle. This is all well and good. Plaintiffs certainly applaud any insurer's good faith compliance with its legal duties. But that discussion has absolutely no relevance to the facts of this case. If State Farm is truly committed to the high ideals of the Best Practices Report, it would presumably welcome a declaration which prevents an insurance company from using a false allegation of fact as the means by which to obtain an illegitimate gain.

### E.     PLAINTIFFS ARE ENTITLED TO SEEK ATTORNEYS FEES

§627.736(8), Fla. Stat. (2020) provides that "with respect to *any dispute* under the provisions of ss. 627.730-627.7405…between an assignee of an insured's right and the insurer, the provision of § 627.428 and 768.79 apply... (emphasis added). By using the phrase "any dispute," the legislature emphasized that an insured's recovery of attorney's fees is not limited to the recovery of insurance benefits. "Any dispute" under the PIP statute that leads to the entry of a judgment against an insurer entitles the insured or assignee to an award of attorney's fees.

### II.    CONCLUSION

Plaintiffs seek a declaration that State Farm's opinion about the import of its statistics is not a plausible fact upon which to base the fraud accusations it threatens. State Farm's Motion to Dismiss attempts to recast Plaintiffs' Complaint into a referendum on its ability to investigate and prosecute fraud cases when it is nothing of the kind. That State Farm goes to such lengths to avoid addressing the actual averments made and relief sought is really the best evidence of all that State Farm's Motion is wholly without merit and should be denied.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 22, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing and a link to this document to Benjamine Reid, Esquire, CARLTON FIELDS, P.A., 100 Southeast

Second Street, Suite 4200, Miami, Florida 33131, bried@carltonfields.com, D. Matthew Allen, Esquire, CARLTON FIELDS, P.A., Corporate Center Three at International Plaza, 4221 W. Boy Scout Boulevard, Suite 1000, Tampa, Florida 33607, mallen@carltonfields.com.

    Respectfully Submitted,

*/s/Mac S. Phillips*
Mac S. Phillips
Florida Bar No. 195413
PHILLIPS TADROS, P.A.
Counsel for Plaintiffs
12 SE 7th Street, Ste. 803
Fort Lauderdale, FL 33301
t.    954.642.8885
f.    954.252.4621
e.    mphillips@phillipstadros.com
       service@phillipstadros.com

Andrew P. Baratta
Pennsylvania Bar No. 82250
*Admitted Pro Hac Vice*
BARATTA, RUSSELL & BARATTA
Counsel for Plaintiffs
3500 Reading Way
Huntingdon Valley, PA 19006
t.    215.914.2222
f.    215.914.2118
e.    andrew@barattarussell.com

***Attorneys for Plaintiffs***